**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DASHAUN JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>BRENDAN SULLIVAN, *et al.*,<br><br>Defendants. | No. 24cv4235 (EP) (LDW)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Dashaun Jackson brings this action against Detectives Brendan Sullivan ("Detective Sullivan"), Nicholas Falcicchio ("Detective Falcicchio"), Matthew Casterline ("Detective Casterline") (collectively, "Defendants"), and John Does 1–10. Plaintiff alleges that Defendants and John Does 1–10 violated his civil rights by wrongfully arresting, prosecuting, and imprisoning him for the murder of Paris Lee. D.E. 45 ("First Amended Complaint" or "FAC"). Defendants move to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). D.Es. 77-1 ("Sullivan & Falcicchio's Motion" or "Sullivan & Falcicchio Mot.") & 78-1 ("Casterline's Motion" or "Casterline Mot.") (collectively "Defendants' Motions" or "Motions"). Plaintiff opposes. D.E. 81 ("Opposition" or "Opp."). Defendants reply. D.Es. 82 ("Sullivan & Falcicchio Reply") & 83 ("Casterline Reply"). The Court decides the Motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth herein, the Court will **GRANT in part** and **DENY in part** Defendants' Motions.

## I.     BACKGROUND

### A.     Factual Background[1]

On or around May 19, 2018, an individual named Paris Lee was shot and killed outside a nightclub in Elizabeth, New Jersey. FAC ¶ 14. Led by Detectives Sullivan and Casterline, the Union County Homicide Task Force (the "Task Force") took over the investigation of Mr. Lee's death from the Elizabeth Police Department after the initial investigation. *Id.* ¶¶ 15–16. On or around August 23, 2018, Detective Sullivan swore out an affidavit of probable cause for search warrants to obtain Plaintiff's cellphone data from Sprint and account data from Google, which were both approved by a judge that same day. *Id.* ¶¶ 18–19. The Task Force received the cellphone data from Sprint on or around August 27, 2018, and the Google data on or around November 17, 2018. *Id.* ¶¶ 20, 24. According to Plaintiff, his cellphone and Google data showed that he was not in the area of Mr. Lee's murder at the time the murder took place. *Id.* ¶ 34.

On or around October 26, 2018, a certain Detective Dellaquila interviewed Plaintiff's grandmother, Ella Jackson, and showed her surveillance video of the area around her apartment from the morning of May 19, 2018. *Id.* ¶ 21. Ms. Jackson was not able to identify an individual depicted in the surveillance video. *Id.* ¶ 23. Ms. Jackson informed Detective Dellaquila that she was not at her apartment on May 19, 2018, and that Plaintiff—as well as her other grandchildren— had access to the apartment, but did not live there. *Id.* ¶ 22.

On or around December 17, 2018, Detective Casterline swore out and secured an arrest warrant for Plaintiff. The affidavit of probable cause ("Arrest Warrant Affidavit") Detective Casterline submitted states the following:

---

[1] The facts in this Section (and throughout this Opinion) are taken from the well-pled factual allegations in the First Amended Complaint, which the Court presumes to be true for purposes of resolving the Motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On May 19, 2018, the Elizabeth Police responded to Angel's Go Go Bar on a report of a shooting. Paris Lee was found shot to death in the rear parking lot. Video footage from the bar shows three people wearing hoods pulled around their faces enter the parking lot, walk up to Lee, surround him and shoot him to death at 2:36 am. The shooters are tracked by video walking to the crime scene from a 2003 Lexus sedan, which was parked on Anna St. at 2:29 am. The Lexus was tracked by video footage and License Plate Recognition system traveling from Liberty Street, Plainfield to Anna Street. Video shows a male exit 312 Liberty Street at 1:50 am, which is an address associated with Deshaun Jackson, who entered the Lexus with two others. Elle Jackson indicated she rents the apartment at 312 Liberty Street, Plainfield and D. Jackson is her grandson, who has access to the apartment. D. Jackson has provided this as his address to law enforcement and to Sprint regarding telephone 908-274-8734, an account registered in his name. E. Jackson indicated that she has communicated with D. Jackson via telephone and that his number is 908-274-8734. LPR[2] systems shows the Lexus in Plainfield at 12:34 am and 1:54 am on May 19th traveling east. The LPR system shows the Lexus returning to Plainfield at 3:06 am. A review of phone records for 908-274-8734, shows this number was active on May 18th and May 19th. Cell phone location data tracked 908-274-8734 traveling east along the Rt. 22 corridor from Plainfield to Elizabeth between 1:45 am and 2:11 am. The data tracked 908-274-8734 from Elizabeth to Plainfield after the shooting along Rt. 22 corridor between 2:42 am and 3:08 am.

*Id.* ¶ 26.

On or around December 18, 2018, while Plaintiff was in custody at the Union County Jail on an unrelated matter, Plaintiff was charged with the homicide of Mr. Lee and related offenses. *Id.* ¶ 27. After the unrelated matter on which Plaintiff was held was either dismissed or a *nolle prosequi* was entered, Plaintiff was held in custody for the murder of Mr. Lee. *Id.* ¶¶ 28–29.

Detective Falcicchio subsequently, on or around February 22, 2019, generated a report that intentionally misrepresented Plaintiff's cellphone data to show him in Elizabeth, New Jersey at the time of the shooting. *Id.* ¶ 30. Plaintiff was then indicted for Mr. Lee's murder on or around March 4, 2019. *Id.* ¶¶ 31. Plaintiff was acquitted of all charges related to Mr. Lee's murder on March

---

[2] License Plate Recognition.

29, 2022, having spent approximately three-and-a-half years in prison for a crime he did not commit.[3]  *Id.* ¶¶ 32–33.

### B.    Procedural History

On March 26, 2024, Plaintiff filed a complaint bringing one "malicious prosecution/wrongful arrest/wrongful imprisonment" claim under state law and one "false imprisonment/wrongful arrest/malicious prosecution" claim under 42 U.S.C. § 1983.  D.E. 1 ("Complaint").  Plaintiff brought both of these claims against Detectives Sullivan and Casterline in both their individual and official capacities as employees of Union County, as well as against Union County d/b/a the Union County Police Department, Martin Mogensen (in both his individual and official capacity as an employee of Union County), Union County d/b/a the Union County Sheriff's Office, Peter Corvelli, Jr. (in both his individual and official capacity as an employee of Union County) (collectively, the "County Defendants"), the City of Elizabeth d/b/a Elizabeth Police Department, Earl Graves (in both his individual and official capacity as an employee of the Elizabeth Police Department), the City of Plaintiff d/b/a Plainfield Police Department, James Abney (in both his individual and official capacity as an employee of the Plainfield Police Department), and John Does 1–10.  *Id.* ¶¶ 2–12.

After the City of Plainfield, James Abney, and the County Defendants answered the Complaint and filed cross-claims for contribution and/or indemnification against their co-defendants, D.Es. 20 & 21, Detective Sullivan, the City of Elizabeth, and Earl Graves moved to dismiss the Complaint, D.Es. 29 & 41.  Meanwhile, Plaintiff, James Abney, and the City of

---

[3] Plaintiff alleges that he spent "approximately four years in prison for a crime he did not commit," *id.* ¶ 32, but given that Plaintiff also alleges that he was not arrested for the murder until December 18, 2018, *id.* ¶ 27, and was acquitted on March 29, 2022, *id.* ¶ 31, he—at the very most—spent three years, four months, and eleven days in prison for a crime he did not commit.

Plainfield stipulated to dismissal of the action without prejudice against James Abney and the City of Plainfield.  D.E. 32.

Plaintiff then filed his First Amended Complaint on September 23, 2024, against Detectives Casterline, Sullivan, and Falcicchio in their individual capacities, as well as against the County Defendants and John Does 1–10.  FAC ¶¶ 2–9.  In this First Amended Complaint, Plaintiff brings a single "false imprisonment/wrongful arrest/malicious prosecution" claim under 42 U.S.C. § 1983 against the aforementioned individuals.  *Id.* ¶¶ 47–60.

On September 26, 2024, the Hon. Michael E. Farbiarz denied Detective Sullivan's and the City of Elizabeth and Earl Graves's motions to dismiss the Complaint, D.Es. 29, 41, as moot.  D.E. 48.  This action was subsequently reassigned to the Hon. Claire C. Cecchi on September 30, 2024, D.E. 51, before being reassigned to the undersigned on November 4, 2024, D.E. 59.

Plaintiff and the County Defendants then stipulated to the dismissal without prejudice of the action as to the County Defendants, D.E. 64, leaving only Detectives Sullivan, Falcicchio, and Casterline and John Does 1–10 in this action.  *See* FAC.  Defendants subsequently filed motions to dismiss the First Amended Complaint, D.Es. 65 & 66, which the Court administratively terminated for failure to comply with this Court's requirement that parties file letters with the Court prior to filing motions to dismiss.  D.E. 67.  Upon receipt of the parties' letters, the Court permitted Defendants to re-file their motions to dismiss.  D.E. 76.  Defendants accordingly re-filed their Motions on January 22, 2025, Sullivan & Falcicchio Mot., and January 24, 2025, Casterline Mot.[4] Plaintiff filed his Opposition to the Motions on February 18, 2025.  Opp.  Defendants filed their Replies on February 24, 2025.  Sullivan & Falcicchio Reply; Casterline Reply.

---

[4] The Sullivan & Falchicchio Notice of Motion is at D.E. 77 and the Casterline Notice of Motion is at D.E. 78.

## II.    LEGAL STANDARD

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim.  In reviewing a 12(b)(6) motion, the district court must conduct a two-part analysis.  "First, the factual and legal elements of a claim should be separated.  The . . . [c]ourt must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, [the court] must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Accordingly, to survive a 12(b)(6) challenge, the claims must be facially plausible, meaning that the well-pled facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (citation modified).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Fowler*, 578 F.3d at 211.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.    DISCUSSION

Defendants move for dismissal on several grounds.  For one, Detectives Sullivan and

Falcicchio assert that they are entitled to absolute immunity. Because this assertion of immunity is mostly independent from the other asserted grounds for dismissal (and therefore does not require the Court to delve deeply into the meat of the factual allegations), the Court first addresses—and rejects—Detective Sullivan's and Detective Falcicchio's assertions of absolute immunity. The Court then turns to each of the Defendants' arguments that Plaintiff has failed to allege sufficient facts to state a claim against them and determines that Defendants are entitled to dismissal of the First Amended Complaint without prejudice on that basis. Finally, the Court explains that Defendants are not entitled to qualified immunity at this juncture.

### A.    Detectives Sullivan and Falcicchio Are Not Entitled to Absolute Immunity at This Time

Detectives Sullivan and Falcicchio argue that, as employees of the Union County Prosecutor's Office, they are entitled to absolute immunity and, therefore, that Plaintiff's claims[5] against them should be dismissed with prejudice. Sullivan & Falcicchio Mot. at 4–8.

Prosecutors are "absolutely immune from liability under § 1983 for engaging in conduct that serves a quasi-judicial function." *Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024), *cert. denied sub nom. Baer v. Roberts*, 145 S. Ct. 414 (2024). For conduct to serve a quasi-judicial function, it "must be 'intimately associated with the judicial phase of the criminal process' or an analogous judicial proceeding"—not "administrative or investigatory" conduct "unrelated to initiating and conducting judicial proceedings." *Id.* (first quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); then quoting *Weimer v. County of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020)). Investigators—including police detectives—"engag[ing] in ongoing investigative activities at the

---

[5] Plaintiff brings a single "false imprisonment/wrongful arrest/malicious prosecution" claim under 42 U.S.C. § 1983 against each of the Detective Defendants and John Does 1–10. Though these three causes of action are similar, the Court analyzes them separately—and refers to them as separate claims for simplicity's sake—because the differences between their elements are relevant to the Court's analysis *infra* Section III.B.

behest of the prosectors" in furtherance of a criminal prosecution may also be entitled to absolute immunity. *Davis v. Grusemeyer*, 996 F.2d 617, 631–32 (3d Cir. 1993), *abrogated on other grounds by Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644 (3d Cir. 1998)); *see also Moore v. Middlesex Cnty. Prosecutors Off.*, 503 F. App'x 108, 109 (3d Cir. 2012) (same).

A court's analysis of whether absolute immunity bars a claim "has two basic steps, though they tend to overlap." *Roberts*, 90 F.4th at 625 (quoting *Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020)). First, the court "ascertain[s] just what conduct forms the basis for the plaintiff's cause of action." *Id.* (quoting *Fogle*, 957 F.3d at 161). Second, the court "determine[s] what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* (quoting *Fogle*, 957 F.3d at 161) (citation modified).

Once an absolute immunity defense is asserted, "the onus is on the prosecutor [or prosecutor's agent] to demonstrate 'that absolute immunity should attach to each act he allegedly committed that gave rise to a cause of action.'" *Id.* at 160 (quoting *Light v. Haws*, 472 F.3d 74, 80 (3d Cir. 2007)). When a defendant is asserting an absolute immunity defense at the motion to dismiss stage, its "burden is uniquely heavy" because "in a motion to dismiss, it is the defendant's conduct as alleged in the complaint that is scrutinized," and the defendant must therefore "show that the conduct triggering absolute immunity 'clearly appears on the face of the complaint.'" *Id.* at 160–61 (first quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); then quoting *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989)).

After applying the two-step test to Detective Sullivan's and Detective Falcicchio's assertions of absolute immunity, the Court finds—for the reasons stated below—that Detectives Sullivan and Falcicchio have not met their uniquely heavy burden to show that the conduct they

contend triggers absolute immunity clearly appears on the face of Plaintiff's First Amended Complaint.

### 1.    Detective Sullivan

Detective Sullivan asserts that he is entitled to absolute immunity because "all conduct Plaintiff alleges related to [Detective] Sullivan falls within his role as an employee of the prosecutor's office." Sullivan & Falcicchio Mot. at 7. But Detective Sullivan's reliance on his employment with the prosecutor's office is misplaced. While the Third Circuit has made clear that absolute immunity may apply to detectives "engag[ing] in ongoing investigative activities at the behest of the prosecutors" in furtherance of a criminal prosecution, *Davis*, 996 F.2d at 631–32, that does not mean that Detective Sullivan's conduct is automatically subject to absolute immunity simply because he is employed by a prosecutor's office rather than a police department. In fact, the Third Circuit has recently rejected that argument (albeit non-precedentially), holding that "prosecutorial immunity does not extend to law enforcement officers carrying out law enforcement functions" like "submitting a probable cause affidavit"—even when the law enforcement officer is a "prosecutorial employee." *Saintil v. Borough of Carteret*, No. 22-2898, 2024 WL 3565308, at *7 n.14 (3d Cir. July 29, 2024) (citing *Malley v. Briggs*, 475 U.S. 335, 342–44 (1986)). In *Malley*—the case on which the Third Circuit relied in *Saintil*, "the Supreme Court declined to extend absolute immunity to a policeman's actions in seeking an arrest warrant because it 'is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.'" *Schrob v. Catterson*, 948 F.2d 1402, 1413–14 (3d Cir. 1991) (quoting *Malley*, 475 U.S. at 342–43)).

Detective Sullivan's conduct here is not subject to absolute immunity for the same reasons. As Detective Sullivan concedes, "the [First] Amended Complaint focuses on Sullivan's involvement in swearing out an affidavit of probable cause to obtain a search warrant for

[Plaintiff's] cellphone records." Sullivan & Falcicchio Reply at 3. Such conduct is precisely the type of law enforcement investigatory function to which the Third Circuit declined to extend absolute immunity in *Saintil*. *See* 2024 WL 3565308, at *7 n.14. And swearing out a *search* warrant is even "further removed from the judicial phase of criminal proceedings" than the police officer's conduct in seeking an *arrest* warrant to which the Supreme Court declined to extend absolute immunity in *Malley*. *See* 475 U.S. at 342–44; *see also Patton v. Stamper*, No. 24-166, 2025 WL 756638, at *7 (W.D. Pa. Feb. 7, 2025), *report and recommendation adopted*, 2025 WL 1506308 (W.D. Pa. May 27, 2025) (rejecting on similar grounds the argument that absolute immunity applied to law enforcement officer who submitted probable cause affidavit in support of applications to install video surveillance devices).

It matters not that "[s]uch conduct could not have occurred unless Plaintiff was already a person of interest in the underlying homicide investigation" and therefore that Detective Sullivan "took part in the prosecutorial process by assisting in obtaining more information for the prosecutor to ultimately charge Plaintiff," as Detective Sullivan argues. Sullivan & Falcicchio Reply at 3–4. To extend absolute immunity for law enforcement officers employed by prosecutor's offices to any conduct connected to obtaining information on a person of interest in an investigation would completely vitiate the "careful dissection of the [officer's] actions" the absolute immunity analysis requires. *See Fogle*, 957 F.3d at 160; *Roberts*, 90 F.4th at 626 ("[T]he fact that a prosecutor generated evidence for an ongoing judicial proceeding cannot per se be enough to show that their conduct served a prosecutorial function."). And—most importantly—it would fly in the face of the Supreme Court's directive that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993). Accordingly, because it is not clear from the face of

10

the First Amended Complaint that probable cause existed to arrest Plaintiff when Detective Sullivan obtained a search warrant and/or that he was functioning in the capacity of an advocate in any other respect when he did so, Detective Sullivan is not entitled to absolute immunity for his search warrant-related conduct.

Nor is it clear from the face of the First Amended Compliant that Detective Sullivan's other (more general) alleged conduct—such as "lead[ing] the homicide investigation," FAC ¶ 16—triggered absolute immunity.  While Detective Sullivan asserts that "[a]ny deficiency within the [First] Amended Complaint which speaks to the role [Detective Sullivan's] action[s] played in the overall charging of Plaintiff is the fault [of] Plaintiff's own insufficient pleadings and poor drafting of the same," Sullivan & Falcicchio Reply at 3, it is precisely the First Amended Complaint's lack of factual specificity surrounding Detective Sullivan's involvement in the prosecution of Plaintiff that prevents Detective Sullivan from meeting his "uniquely heavy" burden to show that his entitlement to absolute immunity "clearly appears on the face of the complaint."  *See Fogle*, 957 F.3d at 160–61 (quoting *Wilson*, 878 F.2d at 776)); *see also Fullman v. City of Philadelphia*, No. 24-969, 2025 WL 343691, at *8 (E.D. Pa. Jan. 30, 2025) (finding no absolute immunity at motion to dismiss stage where it did not clearly appear on the face of the complaint that prosecutor was serving in an prosecutorial rather than investigatory capacity).

Accordingly, the Court will **DENY** Sullivan & Falcicchio's Motion insofar as it asserts that Detective Sullivan is entitled to absolute immunity for the claims alleged in Plaintiff's First Amended Complaint.

### 2.    Detective Falcicchio

While the Court finds that whether Detective Falcicchio is entitled to absolute immunity is a closer call than whether Detective Sullivan is entitled to the same, the Court nevertheless

concludes that Detective Falcicchio has not established his entitlement to absolute immunity at this stage of the proceedings, either.

The only specific allegation regarding Detective Falcicchio's conduct in the First Amended Complaint is that "[o]n or about February 22, 2019, Defendant Falcicchio generated a report that intentionally misrepresented Plaintiff's cellphone data to show him in Elizabeth at the time of the shooting." FAC ¶ 30. As Detective Falcicchio correctly points out, this alleged conduct occurred after an arrest warrant for Plaintiff was secured on December 17, 2018, and after Plaintiff was charged with homicide on December 18, 2018. *See* Sullivan & Falcicchio Reply at 4 (citing FAC ¶¶ 25–27, 30). Detective Falcicchio accordingly argues that the post-charge timing of his alleged actions makes "clear" that those actions "were intended to assist in the prosecution of Plaintiff." *Id.* But this is precisely the argument that the Third Circuit rejected in *Roberts* last year. There, the Third Circuit held that "the fact that a prosecutor sought to generate evidence post-charge cannot be enough to show that their conduct served a prosecutorial function." 90 F.4th at 626. The court further held that the "presence . . . of a connection to a judicial proceeding"—"alone or combined" with the conduct occurring post-charge—is insufficient to establish per se that the conduct was prosecutorial. *Id.* at 627.

Here, the only other evidence other than the post-charge timing of Detective Falcicchio's conduct that he asserts renders his conduct quasi-judicial is that the investigators already possessed the cellphone data for which he created a report and "thus, it can be gleaned that Falcicchio was merely preparing it for its later use in Plaintiff's prosecution." Sullivan & Falcicchio Reply at 5. Detective Falcicchio's attempt to create another bright-line test—this time based on whether evidence was already known by investigators/prosecutors—again fails. While it is true that "play[ing] the detective's role to search for clues and corroboration" is one of the functions for

12

which individuals are not entitled to absolute immunity, *Roberts*, 90 F.4th at 630 (citation modified), it does not necessarily follow that any conduct related to already-obtained evidence is prosecutorial. In fact, the Third Circuit found in *Fogle* that an allegation that defendants had "mispresented [evidence] in written and oral reports" after the evidence had already been obtained was not sufficient to establish a prosecutor's entitlement to absolute immunity at the motion to dismiss stage, because it was unclear whether the prosecutor "functioned as an advocate" or "an investigator." 957 F.3d at 163. It is similarly unclear from the face of the First Amended Complaint whether Detective Falcicchio was functioning as an advocate when he allegedly misrepresented Plaintiff's cellphone data in a report. While it very well may be that Detective Falcicchio was serving in a quasi-judicial conduct when he did so, he has not carried his burden of clearly establishing as such based on the face of the First Amended Complaint.

The Court will therefore **DENY** Sullivan & Falcicchio's Motion insofar as it asserts that Detective Falcicchio is entitled to absolute immunity for the claims alleged in Plaintiff's First Amended Complaint.[6]

### B.    Plaintiff Has Failed to State a Claim Against Any Defendant

Detectives Sullivan and Falcicchio next argue that Plaintiff's claims fail because his First Amended Complaint (1) "consist[s] of non-specific factual allegations and conclusory statements of law" and (2) fails to demonstrate that Detectives Sullivan and Falcicchio "were personally involved in any alleged wrongdoing." Sullivan & Falcicchio Mot. at 3–4, 8–14. Detective

---

[6] As the Third Circuit explained in *Roberts*, "[t]his does not mean, however, that" Detective Falcicchio—or Detective Sullivan, for that matter—"is precluded from asserting an absolute immunity defense at later stages of this litigation." 90 F.4th at 631. If, for instance, Plaintiff files a second amended complaint curing (some or all of) the deficiencies set forth *infra* Section III.B, and discovery ensues, "[a]s the record develops, [Detectives Falcicchio and Sullivan] may be able to establish that [their] conduct served a quasi-judicial function. If so, [they] may yet be entitled to absolute immunity." *Id.*

Casterline, for his part, contends the Arrest Warrant Affidavit he swore out showed that Plaintiff's arrest was supported by probable cause such that Plaintiff has pled no constitutional violation. Casterline Mot. at 7–14.

Plaintiff brings his false imprisonment, wrongful arrest, and malicious prosecution claims under 42 U.S.C. § 1983 for violation of his rights under the Fourth Amendment of the Constitution. FAC ¶¶ 47–60. To state a claim under § 1983, a plaintiff must show, "first, that []he was deprived of a constitutional right and, second, that the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citation modified). A plaintiff must also show that a defendant has "personal involvement in the alleged wrongs" through "[a]llegations of participation or actual knowledge and acquiescence . . . made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, Defendants do not dispute that they were acting under color of state law when they undertook the relevant acts in this case, but they do dispute that that they deprived Plaintiff of any constitutional right. *See generally* Motions. While Defendants make various arguments with respect to Plaintiff's failure to sufficient allege deprivation of a constitutional right, they all argue that Plaintiff has failed to show a lack of probable cause for Plaintiff's arrest, detention, and/or prosecution. *See* Sullivan & Falcicchio Mot. at 10, 12, 14; Casterline Mot. at 7–14. Lack of probable cause is an essential element of each of Plaintiff's claims. *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) ("False arrest and false imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.") (citation modified); *Est. of Smith v. Marasco*, 318 F.3d 497, 522 (3d Cir. 2003) ("[I]nitiation of the proceeding without probable cause is an essential element of a malicious prosecution claim . . . .").

As explained below, the Court agrees that Plaintiff has failed to allege enough facts to state a plausible claim against Detectives Sullivan and Falcicchio based on a combination of Plaintiff's failure to (1) show their personal involvement in Plaintiff's arrest, detention, and/or prosecution and (2) sufficiently allege a lack of probable cause for those actions. The Court further concludes that Plaintiff has failed to allege sufficient facts with respect to the Arrest Warrant Affidavit to show that any omissions allegedly made by Detective Casterline were material to a probable cause finding.

For one, Plaintiff has failed to allege precisely with what crimes he was wrongfully charged. While Plaintiff does state that he was "charged with the homicide of Paris Lee and related offenses" and later indicted for murder, FAC ¶¶ 27, 31, nowhere does he specify what these related offenses were. *See* FAC. Plaintiff also fails to allege the crimes for which he was wrongfully arrested. *See* FAC ¶¶ 25–26 (explaining that an arrest warrant was secured and listing the facts and circumstances supporting probable cause allegedly stated therein, but not stating what crime(s) Plaintiff suspected of committing). Facts setting forth precisely the crimes for which he was arrested and for which he was charged and detained—information which is presumably within Plaintiff's control and knowledge—are required for Plaintiff to be able to adequately allege that Defendants lacked probable cause to arrest and/or detain him *for those crimes*. This crime-by-crime analysis is particularly crucial for false arrest and false imprisonment claims because "[f]alse arrest and false imprisonment claims will necessarily fail if probable cause existed for *any one of the crimes* charged against the arrestee." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (emphasis added). Accordingly, Plaintiff's failure to allege the other crimes for which he was falsely arrested and falsely imprisoned prevents the Court from plausibly inferring that there was no probable cause to arrest and/or detain him for those "related offenses." And while his failure

to allege the other crimes is not necessarily fatal to Plaintiff's malicious prosecution claim writ large because "probable cause on one charge does not foreclose a malicious prosecution cause of action based on additional charges for which there was no probable cause," courts must nevertheless "consider probable cause as to each of the charges," *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016) (citation modified)—something the Court is unable to do here given Plaintiff's pleading deficiencies.

It is not sufficient for Plaintiff to state that "[a]t no time was there any evidence (probable cause/reasonable suspicion) connecting Plaintiff to the alleged charges." FAC ¶ 46. That a defendant lacked probable cause "is a legal conclusion" that a court is not required to accept as true on a motion to dismiss and that "do[es] not illustrate the absence of probable cause." *Gebhart v. Steffen*, 574 F. App'x 156, 159 (3d Cir. 2014); *Cook v. Tustin*, No. 24-431, 2024 WL 3460112, at *6 n.4 (E.D. Pa. July 18, 2024) ("Although at this stage the Court takes Cook's factual allegations as true, Cook's allegation that Trooper Tustin lacked probable cause is 'in reality . . . a legal conclusion . . . pleaded as a factual assertion, which is not entitled to a presumption of truth.'" (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012), which held that an allegation that an individual was "compelled" to take an action was "a legal conclusion artfully pleaded as a factual assertion, which is not entitled to a presumption of truth")).

Relatedly, Plaintiff has also failed to sufficiently allege Detectives Sullivan's and Falcicchio's personal involvement in each of the allegedly wrongful actions "with appropriate particularity." *Rode*, 845 F.2d at 1207.

### 1. Detective Sullivan

Although Plaintiff alleges generally that Detective Sullivan "le[d] the homicide investigation regarding Paris Lee's death," FAC ¶ 16, the only specific action he alleges Detective Sullivan took is "sw[earing] out an affidavit of probable cause to get a search warrant for Plaintiff's

cellphone data from Spring and Google account data from Google" on or around August 27, 2018, FAC ¶ 18.  But Plaintiff does not allege that Detective Sullivan made any false or misleading statements (or omissions) in that affidavit of probable cause for the search warrant—or that Detective Sullivan's actions were wrongful in any other respect.  Nor does Plaintiff detail with particularity Detective Sullivan's involvement in the acts Plaintiff does assert were wrongful—i.e., Plaintiff being arrested and charged nearly four months after the search warrants were obtained and eventually detained for those charges once the unrelated charges for which he was already being detained were dismissed.  *See* FAC ¶¶ 25–29; *see Berg v. Cnty. of Allegheny*, 219 F.3d 261, 274 (3d Cir. 2000) (false arrest claim against defendant not cognizable where defendant "initiated the series of events that ultimately led to [plaintiff's arrest] but there was no evidence that defendant "intentionally caused his arrest").  Plaintiff does not plead facts warranting the inference that Detective Sullivan participated in—or that he actually knew and acquiesced to—Plaintiff being arrested, detained, or charged without probable cause nearly four months after taking the only action Plaintiff ascribes to Detective Sullivan with particularity.  Plaintiff's failure to state with particularity Detective Sullivan's personal involvement therefore further supports dismissal of Plaintiff's claims against Detective Sullivan.  *See, e.g.*, *Wadhwa v. Sec'y Dep't of Veterans Affs.*, 396 F. App'x 881, 884 (3d Cir. 2010) (dismissal appropriate where plaintiffs did not "detail with particularity the individual [defendants'] participation or actual knowledge or acquiescence in any of" the alleged searches of plaintiffs even though plaintiffs had alleged that defendants had authorized the investigation into plaintiffs and the searches); *Payne v. Butts*, No. 22-2210, 2022 WL 16916347, at *2 (3d Cir. Nov. 14, 2022) (explaining that "[a] mere hypothesis about a defendant's knowledge will not suffice" at the motion to dismiss stage and affirming district

court's dismissal of claims against defendants because plaintiff had failed to allege their personal involvement with sufficient particularity).

The Court will accordingly **DISMISS** *without prejudice* Plaintiff's First Amended Complaint as brought against Detective Sullivan.

### 2. *Detective Falcicchio*

As for Detective Falcicchio, Plaintiff does not allege any facts detailing Detective Falcicchio's involvement in Plaintiff's arrest, initial detention, or the initiation of the prosecution against him. *See* FAC. The first—and only—factual allegation regarding Detective Falcicchio is that he "generated a report that intentionally misrepresented Plaintiff's cellphone data to show him in Elizabeth at the time of the shooting" on or around February 22, 2019. FAC ¶ 30. This alleged act took place after Plaintiff was arrested on December 17, 2018, and charged on December 18, 2018. *See* FAC ¶¶ 25–27. Plaintiff has therefore failed to plead Detective Falcicchio's involvement in Plaintiff's arrest, detention, or the initiation of the prosecution against him. For the same reasons explained *supra* with respect to Detective Sullivan, this failure is fatal to Plaintiff's false arrest claim against Detective Falcicchio.

It is also fatal to Plaintiff's malicious prosecution claim, but the road to get there is not quite as straight. That's because the Third Circuit has—in a very recent precedential opinion—suggested that a § 1983 malicious prosecution claim may, under the right circumstances, be brought even where police officers had probable cause to arrest a plaintiff. *See Evans v. Newark City*, No. 23-1723, 2025 WL 2628093 (3d Cir. Sept. 12, 2025). In *Evans*, the Third Circuit rejected the appellants' arguments that "as long as probable cause exists for an arrest, they must be afforded qualified immunity for their conduct during any subsequent prosecution," finding that the plaintiff's allegations that the appellants had fabricated a confession "that was used leading up to and at trial . . . implicat[e]d his due process rights at trial" such that Evans had suffered Fourteenth

18

Amendment injuries as well as Fourth Amendment injuries. The court distinguished the alleged misconduct's infection of the entirety of the criminal proceeding in the case before it with the circumstances in *Zimmerman v. Corbett*, 873 F.3d 414 (3d Cir. 2017), a case where the government had dropped the charges before trial "so [the plaintiff's] claim primarily implicated the Fourth Amendment's guarantee against unlawful pretrial seizure" such that it could appropriately be "resolved on probable cause alone." *Evans*, 2025 WL 2628093, at *7. Resolution on probable cause is appropriate for Fourth Amendment claims because "[t]he Fourth Amendment forbids a state from detaining an individual unless the state actor reasonably believes that the individual has committed a crime—that is, the Fourth Amendment forbids a detention without probable cause." *Halsey v. Pfeiffer*, 750 F.3d 273, 291 (3d Cir. 2014). Following the lead of the previous panel in *Halsey*, the *Evans* court did not "decide precisely when an unlawful seizure [under the Fourth Amendment] ends and a due process violation [under the Fourteenth Amendment] begins," *id.*[7] *See Evans*, 2025 WL 2628093, at *7. This Court accordingly reads *Evans* to hold that where a malicious prosecution claim is based on fabricated evidence used leading up to and at trial, probable cause for the arrest and/or initiation of charges does not necessarily insulate fabricators of evidence from liability for malicious prosecution claims brought under a combination of the Fourth and Fourteenth Amendments.

---

[7] The *Halsey* court also declined to decide the viability of a malicious prosecution claim premised solely on the Fourteenth Amendment. *See id.* at 290 n.14. The *Halsey* court did, however, hold that a standalone Fourteenth Amendment due process claim for fabrication of evidence leading to a conviction may be brought, *see id.* at 294—a cause of action the court then expanded to fabrication of evidence leading to the initiation of criminal charges in *Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016), *as amended* (Sept. 16, 2016). Because Plaintiff has not brought such a standalone Fourteenth Amendment due process claim for fabrication of evidence, the Court need not consider the viability of such a claim in this case.

But *Evans* does not save Plaintiff's malicious prosecution claim against Detective Falcicchio here. *Evans* did not abrogate the requirement that a plaintiff bringing a malicious prosecution claim against a defendant must show that the defendant initiated the prosecution. *See Halsey*, 750 F.3d at 296–97. In *Evans*, both of the appellants contributed to the decision to file charges, *see* 2025 WL 2628093, at *7, therefore establishing that material element. And the court in fact determined that a reasonable jury could find that appellants lacked probable cause to arrest Evans and file charges against him. *Id.* at *5–6. Plaintiff, on the other hand, has not alleged that Detective Falcicchio had any involvement in the decision to file charges against Plaintiff. Nor has Plaintiff actually alleged that Detective Falcicchio's alleged report falsifying Plaintiff's cellphone location data was used leading up to and at trial—or at all, for that matter, *see* FAC—such that *Evans*'s discussion of malicious prosecution claims arising in part under the Fourteenth Amendment would even be relevant. The Court therefore holds that Plaintiff has not, at this stage, adequately alleged a malicious prosecution claim against Detective Falcicchio.

The Court also concludes that Plaintiff has not stated a false imprisonment claim against Detective Falcicchio. The Third Circuit has explained that that "[a]n arrest based on probable cause [cannot] become the source of a claim for false imprisonment." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)). Because Plaintiff has not adequately alleged that any of the Defendants arrested Plaintiff without probable cause, *see supra* Section III.B.1–2 and *infra* Section III.B.3, the Court must find that Plaintiff's false imprisonment claim fails on that basis. *See White v. Andrusiak*, 655 F. App'x 87, 91 (3d Cir. 2016) ("Because Condict's arrest of White was made with probable cause, White cannot support his claim that it constituted false arrest. And, because our precedent specifically

precludes a false imprisonment claim for imprisonment following an arrest based on probable cause, *Groman*, 47 F.3d at 636, that claim must fail as well.").[8]

The Court's conclusion that Plaintiff has not stated a claim against Detective Falcicchio in his First Amended Complaint should not be read to downplay the severity of Detective Falcicchio's alleged fabrication of evidence tying Plaintiff to location of Paris Lee's murder.

---

[8] In light of (1) a few in-Circuit district court opinions suggesting that a false imprisonment claim arising after an arrest with probable cause may be cognizable, though the "'existence and scope of an officer's duty to seek to release a suspect' after a lawful arrest is unsettled in [the Third Circuit]," *Toribio v. Spece*, 558 F. App'x 227, 230 (3d Cir. 2014) (quoting *Wilson*, 212 F.3d at 792), and (2) the Third Circuit's suggestion in *Evans* that malicious prosecution claims for fabrication of evidence may, in some circumstances, be cognizable even when there was probable cause for the initial arrest—which could be viewed as supporting an analogous post-valid arrest false imprisonment cause of action, the Court will nevertheless briefly discuss why Plaintiff's false imprisonment claim—as alleged in his First Amended Complaint—would fail under the reasoning in those cases. In *Diaz v. Bullock*, for instance, the court determined that "the Due Process Clause of the Fourteenth Amendment is the appropriate avenue for redress in situations akin to the present scenario, that is when a person is initially and lawfully arrested pursuant to a valid warrant while at the same time (or thereafter) claiming that he or she is not the person who is wanted." 268 F. Supp. 3d 640, 648 (D.N.J. 2017). In that case, however, the plaintiff had alleged the officers who had falsely imprisoned him were *the same* officers who had arrested him. *Id.* at 654–55. And, in any event, the court found that the right to have an officer make a reasonable inquiry to confirm that he or she has arrested the correct person was not clearly established and therefore granted qualified immunity to the defendants. *Id.* at 648–57. The other cases this Court has identified addressing this false imprisonment theory have also involved the discovery of "exculpatory information tending to controvert probable cause" after an arrest. *See, e.g.*, *Toribio v. Spece*, No. 10-2441, 2013 WL 2435298, at *8 (M.D. Pa. June 4, 2013), *aff'd*, 558 F. App'x 227 (3d Cir. 2014) (finding that plaintiff had not shown that "he was not released within a reasonable amount of time after discovering exculpatory information"). Moreover, these cases involve circumstances where—like in *Evans* and unlike here—the defendants alleged to have falsely imprisoned the plaintiffs were the same individuals who arrested the plaintiffs. *See, e.g.*, *Rowe v. Romano*, 940 F. Supp. 798, 804 (E.D. Pa. 1996). Because, here, (1) the allegedly wrongful post-arrest conduct is closely tied to the allegedly wrongful arrest (i.e., there is no suggestion that Detective Falcicchio's conduct undercut probable cause that existed at the time of the arrest) and (2) Detective Falcicchio was not involved Plaintiff's arrest, Plaintiff's false imprisonment claim is therefore dissimilar to the post-valid arrest false imprisonment claims courts have considered (and, in nearly all circumstances, ultimately rejected). And—more concretely, and perhaps most importantly—Plaintiff has failed to allege that Detective Falcicchio "had any power over plaintiff remaining in custody"—dooming such a claim in any event. *Piergrossi v. Karcewski*, No. 93-4190, 1995 WL 318797, at *8 (E.D. Pa. May 23, 1995), *aff'd*, 79 F.3d 1138 (3d Cir. 1996).

Plaintiff will have the opportunity to, if he is able, correct the pleading deficiencies identified herein. The Court will therefore **DISMISS** *without prejudice* Plaintiff's First Amended Complaint as brought against Detective Falcicchio.

>            3.    *Detective Casterline*

Plaintiff's allegations that Detective Casterline swore out and secured an arrest warrant for Plaintiff, *see* FAC ¶¶ 25–26, 34, require the Court to undertake a more specific probable cause analysis. Where an arrest was made pursuant to a warrant issued by a judge, the plaintiff must allege facts plausibly suggesting that: "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 786–87 (citation modified). To determine whether alleged false statements or omissions are material, a court "must perform a word-by-word reconstruction of the affidavit." *Dempsey*, 834 F.3d at 470. As explained below, upon performing such a reconstruction, the Court finds that Plaintiff has not, at this juncture, plead sufficient facts to plausibly allege that Detective Casterline made any false statements or omissions that were material to a finding of probable cause.

Before detailing its reconstruction of the affidavit at issue here, however, the Court pauses to highlight the complexities inherent in conducting such a reconstruction in connection with the instant Motions. The first issue is that Plaintiff has not actually stated that the warrant he alleges Detective Casterline "secured" was in fact approved by a neutral magistrate such that the aforementioned warrant reconstruction analysis is even appropriate. *See* FAC ¶¶ 25–26.[9] If no

---

[9] The Court notes that Plaintiff did, by contrast, specifically allege that the search warrants for which Detective Sullivan swore out probable cause affidavits "were judicially approved." *Id.* ¶¶ 18–19.

neutral magistrate approved the warrant, then reconstructing the warrant and asking whether the facts allegedly omitted by Detective Casterline were material to the neutral magistrate's finding of probable cause would be inapposite. Although more precise pleading would have obviated this issue, the Court nevertheless finds it plausible to infer at this stage of the proceedings that the arrest warrant for which Detective Casterline swore out the Arrest Warrant Affidavit of probable cause was in fact issued by a neutral magistrate given that Plaintiff pleads that Detective Casterline "secured" the arrest warrant. *See id.* ¶ 25. And, most critically for present purposes, Plaintiff did not argue in Opposition that the warrant reconstruction analysis Detective Sullivan undertook in his Motion would be inappropriate or inapposite for any reason—much less for the reason that the warrant was not issued by a neutral magistrate. *See* Opp.

The second issue with the application of this test—while surmountable for much the same reasons as the first—is that neither Plaintiff nor Detective Casterline have submitted to the Court the actual affidavit of probable cause Detective Casterline is alleged to have used to secure the warrant. As the Third Circuit has noted, its "cases directing the District Court to reconstitute the probable cause affidavit generally arise on summary judgment," where there is a more developed factual record, "not dismissal." *Noviho v. Lancaster Cnty. of Pennsylvania*, 683 F. App'x 160, 164 (3d Cir. 2017). Even so, the Third Circuit and district courts consistently reconstruct probable cause affidavits at the motion to dismiss stage. *See, e.g.*, *Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 747–49 (3d Cir. 2024); *Barraclough v. Animal Friends, Inc.*, No. 23-3157, 2024 WL 4867068, at *2–3 (3d Cir. Nov. 22, 2024); *Baynard v. Mona*, No. 07-723, 2021 WL 4473154, at *5–8 (D.N.J. Sept. 30, 2021). But, even at the motion to dismiss stage, courts undertaking this reconstruction analysis usually have the benefit of reviewing a complete copy of the probable cause affidavit submitted to the magistrate. *See, e.g.*, *Cook*, 2024 WL 3460112, at *1 n.1

(explaining that the plaintiff had attached the relevant affidavit of probable cause to her complaint); *Baynard*, 2021 WL 4473154, at *1 n.1 (noting it would rely on the affidavit of probable cause attached as an exhibit to the defendant's motion to dismiss). Here, however, neither Plaintiff nor Detective Casterline has provided the Court with the complete probable cause affidavit submitted by Detective Casterline. Instead, both parties rely on the paragraph in Plaintiff's First Amended Complaint apparently "stat[ing] the relevant facts and circumstances supporting probable cause," ¶ 26, to conduct their warrant analyses and treat that paragraph as the "affidavit of probable cause attached to the arrest warrant." Opp. at 14; Casterline Mot. at 4. The Court will therefore follow the parties' lead and will, for the purpose of resolving these Motions, operate under the assumptions that the paragraph included in the First Amended Complaint (which the Court refers to as the Arrest Warrant Affidavit) is the complete probable cause affidavit submitted to a neutral magistrate to obtain the arrest warrant and that the magistrate did not receive any other information relevant to the probable cause inquiry.

### a.    Alleged omissions

While the First Amended Complaint does not clearly set forth precisely what Detective Casterline allegedly omitted from the Arrest Warrant Affidavit, it appears that Plaintiff is alleging that Detective Casterline omitted that (1) "Plaintiff's cellphone and Google data showed that he was not in the area at the time the murder took place," FAC ¶ 34; and (2) that Plaintiff's grandmother, Ms. Jackson, "told officers that Plaintiff was one of multiple people with access to her apartment and that he did not live there," Opp. at 14 (citing FAC ¶ 22). Because Detective Casterline concedes—"[s]olely for purposes of this [M]otion"—that Plaintiff has adequately pled that Detective Casterline made these omissions knowingly or with a reckless disregard for the

truth, *see* Casterline Mot. at 8,[10] the Court moves directly to reconstructing the affidavit to include these alleged omissions.[11]

b.    <u>Reconstructed affidavit</u>

Detective Casterline includes a reconstructed Arrest Warrant Affidavit in his Motion. Casterline Mot. at 8–9. Plaintiff did not do the same in his Opposition. *See* Opp. The Court draws on Detective Casterline's proposed reconstruction to put together the following reconstructed affidavit, in which the additions are bracketed and set forth in bold font:

> On May 19, 2018, the Elizabeth Police responded to Angel's Go Go Bar on a report of a shooting. Paris Lee was found shot to death in the rear parking lot. Video footage from the bar shows three people wearing hoods pulled around their faces enter the parking lot, walk up to Lee, surround him and shoot him to death at 2:36 am. The shooters are tracked by video walking to the crime scene from a 2003 Lexus sedan, which was parked on Anna St. at 2:29 am. The Lexus was tracked by video footage and License Plate Recognition system traveling from Liberty Street, Plainfield to Anna Street. Video shows a male exit 312 Liberty Street at 1:50 am, which is an address associated with Deshaun Jackson, who entered the Lexus with two others. Elle Jackson indicated she rents the apartment at 312 Liberty Street, Plainfield and D. Jackson is her grandson, who has access to the apartment. **[E. Jackson indicated that D. Jackson is one of multiple people with access to her apartment and that he did not live there.]** D. Jackson has provided this as his address to law enforcement and to Sprint regarding telephone 908-274-8734, an account registered in his name. E. Jackson indicated that she has communicated with D. Jackson via telephone and that his number is 908-274-8734. LPR systems

---

[10] While Detective Casterline does not explicitly concede that he knowingly made the second omission—that Plaintiff's grandmother told officers that Plaintiff was one of multiple people with access to her apartment and that he did not live there, because Detective Casterline directs his arguments regarding this omission in Reply to its materiality to the reconstructed affidavit, the Court considers that he has conceded the first prong of the test for this omission for purposes of his Motion as well.

[11] In Opposition, Plaintiff attempts to argue that Detective Casterline also improperly omitted any information about specialized training or experience Detective Casterline—or any of the officers involved—had to help them interpret cellphone data. Opp. at 14. The Court agrees with Detective Casterline that Plaintiff did not raise this allegation in his First Amended Complaint and therefore will not consider this argument first made in opposition to Detective Casterline's Motion in reconstructing the affidavit. *See* Casterline Reply at 3 n.1; *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

shows the Lexus in Plainfield at 12:34 am and 1:54 am on May 19th traveling east. The LPR system shows the Lexus returning to Plainfield at 3:06 am. A review of phone records for 908-274-8734, shows this number was active on May 18th and May 19th. Cell phone location data tracked 908-274-8734 traveling east along the Rt. 22 corridor from Plainfield to Elizabeth between 1:45 am and 2:11 am. **[The cell phone location data and Google data from 908-274-8734 showed that 908-274-8734 was not in the area of the shooting at the time of the shooting.]** The data tracked 908-274-8734 from Elizabeth to Plainfield after the shooting along Rt. 22 corridor between 2:42 am and 3:08 am.

c.    Materiality of alleged omissions

An omission is "'material' if [the] reconstructed warrant application containing the alleged omissions . . . would no longer establish probable cause." *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (citing *Wilson*, 212 F.3d at 789). "Probable cause to arrest requires more than mere suspicion; however, it does not require . . . evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995). Straddling that line, probable cause therefore "exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson*, 212 F.3d at 789 (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

Applying this standard to the reconstructed Arrest Warrant Affidavit, the Court concludes that Plaintiff has not plausibly alleged that the reconstructed affidavit would negate probable cause for the arrest warrant against Plaintiff.[12]

For one, the Court finds Plaintiff's argument that "[t]he omission regarding Ms. Jackson's statement to police [that Plaintiff was one of multiple people with access to the apartment] was material because Plaintiff was not the only individual who could have been exiting the apartment"

---

[12] As explained *supra* Section II.B, Plaintiff has not specified the crimes for which he was arrested. The Court, for purposes of this Opinion, analyzes whether Plaintiff has adequately pled that there was no probable cause him to be arrested for homicide because he alleges that he was charged with homicide (and related offenses) the day after Detective Casterline secured his arrest warrant. *See* FAC ¶ 27.

unavailing. *See* Opp. at 14. As the Supreme Court has explained, "probable cause 'deals with probabilities and depends on the totality of the circumstances.'" *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). Accordingly, while the fact that others also had access to Ms. Jackson's apartment may somewhat lessen the probability that Plaintiff was the individual who left the apartment at 1:50 AM on the morning of Paris Lee's shooting and entered the Lexus headed to Elizabeth (where Mr. Lee was shot and killed), it does not—by itself—establish that there was not a fair probability that Plaintiff was in fact that individual. This is particularly true in light of the other facts set forth in the Arrest Warrant Affidavit connecting Plaintiff to the apartment—e.g., that Plaintiff *did* have access to the apartment, that Ms. Jackson was out of town the night of the shooting, and that Plaintiff provided his grandmother's address to law enforcement and to Sprint with respect to his cellphone.

Nor can this allegedly omitted fact rise to the level of negating probable cause when coupled with the alleged omission regarding Plaintiff's cellphone data. Plaintiff does not challenge any of the cellphone data affirmatively included in the Arrest Warrant Affidavit; he takes issue only with Detective Casterline allegedly omitting the cellphone data setting forth Plaintiff's location at the time of the shooting itself.[13] In fact, Plaintiff suggests that "the cellphone data was highly reliable." *See* Opp. at 14. This cellphone data showed that a cellphone both Plaintiff and

---

[13] While Plaintiff's Opposition also contains general statements asserting that "the affidavit of probable cause contains [Detective Casterline's] seemingly unqualified, conclusions, misrepresentations, and omissions regarding the cellphone data," Plaintiff does not elaborate on the nature of any of these conclusions, misrepresentations, and omissions other than the single omission regarding Plaintiff's cellphone location data at the time of the shooting. *See* Opp. at 14–15. And, most critically, Plaintiff did not plead any of those other supposed conclusions, misrepresentations, and omissions in his First Amended Complaint. *See* FAC. Accordingly, the Court is not able to—and will not—excise any other material from the Arrest Warrant Affidavit and considers the other cellphone data included therein in determining whether Plaintiff has alleged a lack of probable cause.

his grandmother identified as Plaintiff's (and which Plaintiff does not dispute belonged to him) traveled from Plainfield—where Plaintiff's grandmother's apartment was located—to Elizabeth between 1:45 AM and 2:11 AM before Paris Lee was shot and killed in Elizabeth at 2:36 AM and then from Elizabeth back to Plainfield between 2:42 AM and 3:08 AM.  Including the allegedly omitted information that Plaintiff's cellphone was not in the area of the shooting at the time of the shooting does not undermine what the cellphone data established regarding the location of Plaintiff's cellphone in the time twenty-five minutes before the shooting and eight minutes after the shooting.  And, even if the cellphone data at the time of the shooting did conflict with the rest of the cellphone data, "[t]he probable cause inquiry . . . does not require that officers correctly resolve conflicting evidence." *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005). Here, although the cellphone location data and Google data from the precise time of the shooting "may have raised suspicion as to [Plaintiff's] whereabouts around the time of the [shooting], it did not undermine probable cause given the other information" the magistrate was presented with in the Arrest Warrant Affidavit.  *See Goodwin*, 836 F.3d at 329 (rejecting plaintiff's argument that "potential alibi information" possessed by officers showing that plaintiff was in jail at the time of a drug sale for which he was arrested undermined probable cause).  Along with facts connecting Plaintiff to his grandmother's apartment, the other information with which the magistrate was provided also includes the license plate recognition data from the Lexus that lines up with the cellphone data from before and after the shooting.  Considering the totality of the circumstances, the Court thus concludes that any potentially "exculpatory facts" omitted from the Arrest Warrant Affidavit, "when weighed against the inculpatory facts, are not strong enough to undermine a finding of probable cause." *Wilson*, 212 F.3d at 792.

Accordingly, because Plaintiff has not plausibly alleged that the reconstructed Arrest Warrant Affidavit that Detective Casterline submitted to secure an arrest warrant for Plaintiff would negate probable cause,[14] the Court will **DISMISS** *without prejudice* Plaintiff's First Amended Complaint as brought against Detective Casterline.

### C.    Defendants Are Not Entitled to Qualified Immunity at This Juncture

Detective Casterline states that this "Court's analysis need go no further" than finding that Plaintiff has not pled sufficient facts to hold Detective Casterline liable for any constitutional violation, but argues—in the alternative, in the event the Court finds that Plaintiff has pled sufficient facts—that Detective Casterline is entitled to qualified immunity because he acted reasonably. Casterline Mot. at 14. Detectives Sullivan and Falcicchio, in turn, devote very little attention to qualified immunity—focusing instead on their arguments that Plaintiff has not met satisfied pleading requirements and that they are entitled to absolute immunity—but also argue that they are entitled to qualified immunity because they acted reasonably. *See* Sullivan & Falcicchio Reply at 3.

An officer may be entitled to qualified immunity at the motion to dismiss stage where "(1) the facts alleged show the officer's conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case." *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (citing *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010)). "[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is

---

[14] Because Plaintiff has not pled with specificity Detective Casterline's involvement in any allegedly wrongful act other than securing the arrest warrant, *see* FAC, Plaintiff's ability to state a claim against Detective Casterline rises and falls with the above warrant analysis. *Cf. supra* Section III.B.1 (explaining why Plaintiff's general allegations regarding Detective Sullivan's involvement lack specificity).

established on the face of the complaint." *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

Here, due to the pleading deficiencies identified *supra*, the facts alleged in the First Amended Complaint "do not make clear either that [Defendants'] conduct did not violate a constitutional right or that the right was not clearly established." *Koyi v. Borough of Tinton Falls*, No. 21-20352, 2023 WL 7195170, at *7 (D.N.J. Nov. 1, 2023). It is unclear, for instance, (1) for which crimes Plaintiff was arrested, detained, and prosecuted, (2) to what extent Detectives Sullivan and Falcicchio were involved in the allegedly wrongful conduct, and (3) precisely what information the neutral magistrate who approved the arrest warrant secured by Detective Casterline reviewed (if such a magistrate in fact approved the warrant). Accordingly, the Court will not dismiss Plaintiff's First Amended Complaint on the basis of qualified immunity at this juncture "in light of the possibility that an amendment would cure the deficiencies" in the First Amended Complaint and will thus **DENY** *without prejudice* Defendants' Motions insofar as they assert that Defendants are entitled to qualified immunity for the claim alleged in Plaintiff's First Amended Complaint.[15] *Klingberg v. Hatcher*, No. 17-5563, 2018 WL 3410028, at *4 (D.N.J. July 13, 2018); *Wagner on behalf of B.D. v. City of Newark*, No. 23-731, 2025 WL 635301, at *7 (D.N.J. Feb. 27, 2025); *see also Debrew v. Auman*, 354 F. App'x 639, 642 (3d Cir. 2009) (district court's dismissal of complaint on qualified immunity grounds was "premature" where the plaintiff had failed to—in a threadbare complaint—state a claim and it was unclear "whether the defendants' actions did not violate a clearly established constitutional right" (citing *Thomas*, 463 F.3d at 291)).

---

[15] As is the case with respect to Detectives Sullivan and Falcicchio's absolute immunity defense, Defendants may, of course, re-raise their qualified immunity defenses should this litigation continue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT in part** and **DENY in part** Defendants'

Motions and **DISMISS** the First Amended Complaint ***without prejudice*** as to Defendants.   An

appropriate Order follows.


Dated: September 25, 2025

_____
Evelyn Padin, U.S.D.J.